IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | No. 22-265 |
| | : | |
| STEVEN COHEN | : | |

**March 28, 2024**                                                                                                              **Anita B. Brody, J.**

## MEMORANDUM

Probation and supervised release were never intended to be punitive. These programs were created to provide support and encouragement to aid in rehabilitation. Probation officers should act as life coaches, not as police officers. Supervisees should not face revocation and harsh punishment because of small technical violations and overstrict conditions of release.

Several standard conditions of supervised release and probation have the potential to undermine the rehabilitative purpose of these programs. I will amend four of them in this defendant's Judgment of Conviction to reflect that supervision should be supporting supervisees, not holding them back. I also encourage the Probation Officers to track and memorialize supervisees' progress by providing individualized written progress reports to supervisees, with a copy sent to the Court.

**I. DEVELOPMENT OF PROBATION AND SUPERVISED RELEASE**

Probation and supervised release are both administered by United States probation officers.[1] Probation refers to a period of supervision in lieu of a prison sentence, whereas supervised release is a term of supervision following a term of imprisonment.[2] While they are administered by the same office, they are governed by separate statutory provisions.

---

[1] 18 U.S.C. § 3601.
[2] U.S. SENTENCING COMM'N, FEDERAL PROBATION AND SUPERVISED RELEASE VIOLATIONS 5, 7.

1

Federal probation was created to "alleviat[e] the harshness of punishment" and to encourage rehabilitation without the need to resort to a prison sentence.[3] This follows from probation's origins: the term "probation" was coined by its founder John Augustus to mean "a period of proving oneself and subsequent forgiveness."[4]

Like probation, supervised release was not originally intended to be punitive.[5] It was intended to be used in limited circumstances to address the needs of those with the greatest risk of recidivism.[6] However, supervised release has become a nearly ubiquitous part of prison sentences in the federal system. Between 2005 and 2009, judges imposed supervised release in 99.1% of cases in which it was not statutorily required.[7] Over 108,000 people were on supervised release in 2019, compared with only 16,000 people in 1984.[8] More and more people have become trapped in a cycle of reincarceration and release.[9] About "two-thirds of federal offenders successfully complete[] their terms of supervis[ed release]."[10] The other third have their terms revoked and are sent back to prison.[11] The majority of these revocations are based on noncriminal conduct.[12] It also does not appear that the availability of supervised release results in shorter prison sentences; since

---

[3] WAYNE L. MORSE, IVAR PETERSON, ELIZABETH PETERSON & WILLIAM HURWITZ, PREFACE, 2 ATTORNEY GENERAL'S SURVEY OF RELEASE PROCEDURES. U. S. DEPARTMENT OF JUSTICE vii (1939).

[4] Charles Lindner, *The Path to Statutory Probation in the United States and England*, 71 FED. PROB. J. 36, 38 (2007).

[5] *See* S. Rep. No. 98–225, at 124 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3307 (indicating that the "primary goal" of supervised release is to rehabilitate a defendant).

[6] Fiona Doherty, *Indeterminate Sentencing Returns: The Invention of Supervised Release*, 88 N.Y.U. L. REV. 958, 1019 n.379 (2013) (citing S. Rep. No. 98-225, at 124-25 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3308).

[7] *Id.* at 1015 (2013) (citing U.S. SENTENCING COMM'N, FEDERAL OFFENDERS SENTENCED TO SUPERVISED RELEASE 4 (2010)). The vast majority of those who did receive a term of supervised release were noncitizens subject to deportation following the completion of their prison sentence. *Id.*

[8] *Id.*

[9] *Id.*

[10] U.S. SENTENCING COMM'N, FEDERAL OFFENDERS SENTENCED TO SUPERVISED RELEASE 4 (2010)

[11] *Id.*

[12] "In any one year, roughly sixty percent of revocations are for non-criminal conduct. Non-criminal violations, also known as technical violations, commonly include conduct such as failing to report to the probation officer, failing to submit monthly reports, and failing to attend drug or mental health treatment." Doherty, *supra* note 6, at 1016.

supervised release replaced parole in the federal system, the length of the average federal prison sentence has more than doubled.[13]

Higher caseloads for probation officers can mean worse results for supervisees: less support and more violations.[14] In some cases, probation and supervised release are counterproductive. For those at low risk of reoffending, intensive supervision can actually be criminogenic.[15]

## II. CONDITIONS OF RELEASE

Conditions of probation and supervised release are divided into three categories: mandatory conditions, special conditions, and standard conditions. Courts are required by statute to impose several mandatory conditions on everyone sentenced to probation or supervised release.[16] Special conditions include additional requirements that courts can impose based on the specific characteristics of the defendant or the crime of conviction.[17] Standard conditions are those

---

[13] Doherty, *supra* note 6, at 1017 (citing U.S. SENTENCING COMM'N, FIFTEEN YEARS OF GUIDELINES SENTENCING 46 (2004); U.S. SENTENCING COMM'N, 2010 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS tbl.14, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2010/Table14_0.pdf [https://perma.cc/5JT7-39YE].

[14] Krinsky & Fuhrmann, *Building a Fair and Just Federal Community Supervision System*, at *341 (citing studies published by the CUNY Institute, the U.S. Sentencing Commission, and the Federal Probation Journal).

[15] Low-risk supervisees' recidivism rates can increase if they are subjected to high-intensity supervision that interferes with their ability to work and presents many opportunities for technical violations (e.g., failure to appear at an appointment). *See* Thomas H. Cohen, David Cook & Christopher T. Lowenkamp, *The Supervision of Low-Risk Federal Offenders: How the Low-Risk Policy Changed Federal Supervision Practices Without Compromising Community Safety*, 80 FED. PROB. J. 3, 3 (2016) (study finding that imposing intensive supervision on low-risk supervisees can actually be criminogenic); *see also* Jennifer L. Doleac, Commentary, *Study after study shows ex-prisoners would be better off without intense supervision*, BROOKINGS (July 2, 2018) (listing several randomized trials in which higher-intensity supervision did not improve recidivism rates); Haci Duru, Lori Brusman Lovins & Brian Lovins, *Does Reducing Supervision for Low-Risk Probationers Jeopardize Community Safety?*, 84 FED. PROB. J. 21, 25 (2020) ("Community safety is at worst preserved and at best improved when probation agencies employ strategies to reduce surveillance and supervision requirements for low-risk individuals.").

[16] 18 U.S.C. §§ 3583(d); 3563(a). These conditions include requirements that the defendant not commit another federal, state, or local crime during the period of supervision; that the defendant make restitution or complete community service; that the defendant not unlawfully possess a controlled substance; that the defendant comply with DNA sample collection and drug testing; and (in the case of probation) that the defendant notify the court of changes in their economic circumstances that could affect their ability to pay restitution. There are additional mandatory conditions for certain types of convictions. 18 U.S.C. § 3563(a)(9).

[17] These conditions must involve no greater deprivation of liberty than is reasonably necessary, must be reasonably related to certain sentencing factors, and, in the context of supervised release, must be consistent with policy statements issued by the U.S. Sentencing Commission. 18 U.S.C. § 3583(d) (supervised release); 18 U.S.C. §

conditions that are recommended by the United States Sentencing Guidelines ("USSG") but that are not required by statute.[18] The probation and supervised release statutes list "discretionary conditions" that a court may impose, but which are not required.[19] The standard conditions recommended by the USSG include the majority of these statutory discretionary conditions. Form AO 245B, the Judgment of Conviction form, lists these standard conditions for both probation and supervised release:[20]

## STANDARD CONDITIONS OF SUPERVISION

As part of your probation, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of the time you were sentenced, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

---

3563(b)(22) (probation). Some examples of special conditions include: required support of dependents, participation in a mental health or addiction program, occupational restrictions, and curfews. USSG § 5D1.3.
[18] USSG § 5D1.3(c).
[19] 18 U.S.C. §§ 3583(d); 3563(b).
[20] Form AO 245B, Judgment in a Criminal Case (Rev. 09/19) 6, 11, https://www.uscourts.gov/sites/default/files/ao245b.pdf [https://perma.cc/9GU4-79GS].

4

**III. AMENDMENTS TO THE STANDARD CONDITIONS**

Courts are not required to impose the standard conditions. Judges can examine these conditions and determine whether they serve a goal of probation or supervised release in each supervisee's case. In her article "Indeterminate Sentencing Returns: The Invention of Supervised Release," Clinical Professor of Law and Yale Law School's Deputy Dean for Experiential Education Fiona Doherty divides conditions of supervision into two categories: those that are aimed at establishing control over "criminals," and those that provide reintegrative services (e.g. job training or mental health treatment).[21] She advocates for courts to "consider the regulatory and administrative costs of any conditions they impose and require proof that this condition will actually lead to some desired social goal."[22] I will do so in the Judgment of Conviction in this case by revising four sections of the standard conditions of release to better support the rehabilitative purposes of probation and supervised release.

**A.  Allowing Supervisee to Travel**

- Standard condition text:
    - *You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.*
- Condition, as amended:
    - *You must not knowingly leave the federal judicial **circuit** where you are authorized to reside without first getting permission from the court or the probation officer.*

I have amended this condition to allow supervisees freedom of movement within the federal judicial circuit, not district, where they are authorized to live. The standard condition

---

[21] Doherty, *supra* note 6, at 1019.
[22] *Id.* at 1025.

requiring permission to travel out of district can be extremely challenging for supervisees. For instance, an Eastern Pennsylvania resident with family ties or job opportunities a few minutes away in New Jersey could be prohibited from traveling by their probation officer. Because I am unaware of any individualized reason why this supervisee's limited travel could jeopardize their supervision, I will permit them to travel freely within the judicial circuit of their supervision.

**B. Giving Supervisee Notice of Probation's Visits**

- Standard condition text:
    - *You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.*

- Condition, as amended:
    - *You must allow the probation officer to visit you at any time at your home or elsewhere* **with at least eight hours' notice**, *and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.*

Requiring the probation officer to provide eight hours' notice maintains the officer's flexibility to visit the supervisee's home and work, or other locations. But, the notice requirement alleviates the constant pressure of an imminent violation of a supervisee's privacy.

A person's status as a supervisee, particularly when coupled with intensive restrictions on their freedoms, can serve to label them as a dangerous person, or as a criminal. Under the "labeling" theory of social psychology, such a label can become a self-fulfilling prophecy.[23] As sociologist Jon Gunnar Bernburg has explained, "being labeled or defined by others as a criminal

---

[23] JON GUNNAR BERNBURG, LABELING THEORY 1 (2009).

offender may trigger processes that tend to reinforce or stabilize involvement in crime and deviance, net of the behavioral pattern and the social and psychological conditions that existed prior to labeling."[24] Scholars examining probation and supervised release have noted that these labels can be imposed or exacerbated by the conditions a court sets:[25]

> In deciding which conditions to impose, courts also should be cognizant of the potentially corrosive impact of degradation. The bar on associating with felons without permission, for example, denigrates felons as a tarnished breed, even though the supervisees themselves are almost all felons. Supervisees currently have to submit monthly "truthful" reports to probation officers. They have to urinate regularly in a cup. They must submit to visits from probation officers without notice at home, at work, or anywhere else. They have to ask permission to travel out of district. These conditions do not need to be applied in every case.

A supervisee who is asleep, caring for family members, preparing for an important event at work, or spending time with a partner in the privacy of their home currently faces the prospect of their officer appearing without notice at any time, day or night. Even if the officer does not exercise their right to unannounced visits in inconvenient and disruptive ways, the psychological pressure on a supervisee is significant and can contribute to labeling them as a criminal offender. I will impose the notice requirement to balance a supervisee's privacy with an officer's need to supervise.

## C. Allowing Supervisee Contact with People with Criminal Records

- Standard condition text:
    - *You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.*

---

[24] *Id.*
[25] Doherty, *supra* note 6, at 1025–26.

- Condition, as amended:
    - **[condition omitted in full]**

The standard condition prohibiting unauthorized contact with those who have a felony conviction can remove important connections for those on supervised release. For instance, this standard condition prevents a supervisee from having any unauthorized communication with a family member who has decades-old felony conviction, or with friends and mentors with criminal records who understand what the supervisee is going through and can help them forge their own path forward. This condition also has a disparate impact on certain groups: in 2010, just over 8% of the American population had a felony conviction, but 33% of Black men had one.[26] As noted above, this blanket prohibition on contact with those convicted of a felony serves to label those with criminal records—including the supervisees themselves—as people who can never be seen as more than their convictions.

The portion of this condition that prohibits interaction with those who are engaged in criminal activity can be duplicative of the mandatory condition not to commit any additional crimes (to the extent that the supervisee's prohibited interaction constitutes criminal conspiracy or accomplice liability). Where the interaction does not rise to the level of separate criminal liability, this condition can be too amorphous to serve a real purpose (e.g., a supervisee could plausibly violate this condition by conversing with a loved one who has an addiction and who may be currently engaged in the criminal conduct of possessing that substance).

I do not find that this condition serves the rehabilitative purposes of probation or supervised release, so I will omit it in full.

---

[26] Christopher Zoukis, *Percentage of Americans with Felony Convictions Increases, Especially for Blacks*, PRISON LEGAL NEWS (June 8, 2018), https://www.prisonlegalnews.org/news/2018/jun/8/percentage-americans-felony-convictions-increases-especially-blacks/ [https://perma.cc/Q6EM-QGY3].

### D. Removing Notification Provision

- Standard condition text:
    - *If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.*
- Condition, as amended:
    - *If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may **notify proper authorities**.*

The amendment to this provision does not prevent a probation officer from trying to mitigate any risk that the supervisee could pose to others. The amendment simply removes the overly-complex notification process by which an officer would note concern about a supervisee's potential danger to others, require the supervisee to then have direct contact with these people or organizations, and then call to confirm that notification had been made. Instead of limiting a supervisee's contact with those who have reason for concern, this provision increases it. I do not have before me any individualized reason why this notification process is necessary in this case, so I will impose this standard condition as amended.

### IV. CONCLUSION

A Judgment of Conviction form (ECF No. 29) reflects the standard conditions amended as outlined in this Memorandum.

_____s/ANITA B. BRODY, J._____  
ANITA B. BRODY, J.